Good morning, your honors. Thank you. Katherine Young from the Federal Public Defender's Office for the defendant appellate Dwayne Phelps. Mr. Phelps contends his sentence was unreasonable. The first thing I want to turn to is the United States Supreme Court recent decision in Topia, which brings me to the point that I wanted to apologize for the omission of the Ninth Circuit case in Duran in my briefing. I've raised the issue previously of the impropriety of imposing a custodial sentence for the purpose of rehabilitation, and I have discussed Duran in the circuit split, which was the operative law at the time of the briefing, which should have been included in my brief, which was inadvertently omitted. But in any event, in Topia, the Supreme Court reversed, overruled Duran and held that Sections 3582A and 994K preclude a sentencing court from imposing or lengthening a prison term for the purposes of promoting rehabilitation, which is what happened in this case. In explaining its sentence, the district court stated, I'm going to adopt the findings and recommendations of the probation officer that are set forth in his letter to me dated May 17, 2010. And in that letter, the probation officer cited the 3553 factors, including the need to provide the defendant with needed medical care or other correctional treatment in the most effective manner. Then the probation officer stated, Phelps has serious medical conditions that need to be treated. To his credit, he sought mental health treatment and counseling on his own. However, he acknowledged he ceased that treatment after a short period and returned to drug use. The defendant needs extensive and thorough mental health and substance abuse medical care. The best place for the defendant to receive that care is in a closely monitored custodial sentence. And the probation officer continued to state that the treatment should continue as long as possible so that the maximum period of supervised release is recommended, during which Phelps can employ the guidance of the probation officer to receive the necessary level of medical care. In other words, the district court, under the governance of Duran, which was the operative law at the time, used the need for the defendant to receive medical treatment in its sentence in determining the length and the need for a custodial term. And that, under the recent Supreme Court decision in Topia, is now unacceptable. That was one of Mr. Phelps' reasons for saying that the sentence was unreasonable. And now I'll turn to the others, unless there's any questions on that particular issue. Mr. Phelps claims that the district court excessively relied on the factor of the need to protect the community and gave insufficient weight and consideration to other factors. For example, Mr. Phelps claims that the district court did not consider that Phelps was left alone early in his life without adult guidance or support. His mother was seriously ill. His father deserted him. He was overcome by mental illness as a child. Voices told him to do things. That led him to self-medicate, which then resulted in drug abuse, which only succeeded in exacerbating the voices in his head. He had repeated episodes of mental illness, which were ignored by the Bureau of Prisons throughout two incarcerations, despite BOP psychiatric evaluations, which reported that he displayed unintelligible speech and hallucinations, and despite the fact that Mr. Phelps told BOP psychiatric staff that he experienced auditory and or visual hallucinations continuously and that BOP doctors reported that he appeared to be responding to internal stimuli. It was not until he was released from prison and sought psychiatric treatment by himself that he received mental health treatment. However, he got an ineffective medication, suffered from disabling side effects, concluded that medication was useless, and reverted to drug use. It's undisputed that his mental illness was real and severe. He had been diagnosed with major depressive disorder with psychotic features, schizophrenic disorder, paranoid type, chronic, and psychotic disorder, and those overwhelming mitigating factors were in effect inadequately considered by the district court because it's a fundamental tenet of our jurisprudence that someone who's mentally ill and commits crimes is less culpable. And even worse, as contended in the opening brief, the district court turned mitigating factors into aggravating factors. The district court said that, relying on the probation officer, that Mr. Phelps' recidivism was a serious concern, which required the public needed to be protected for him. But the reason that he was a recidivist was because despite the cries for help at the BOP and despite the recognition by the BOP that he was mentally ill, he had never been treated effectively for mental illness. What is your, what is, you want a remand and you think that you're going to get a lower sentence, despite this record and everything else? Well, I think, Your Honor, it's clear to me that, it will obviously be up to the district court to weigh the factors, but it's clear to me that the district court considered a factor that's now invalid, since the Supreme Court decision in Topia. It was valid at the time the district court imposed the sentence. It is no longer valid. And that necessitates a reconsideration, which should prompt a lower sentence. It's also clear that once Mr. Phelps became appropriately medicated, these mental health issues resolved and he became not a danger to the community. And therefore, if he were appropriately medicated and treated, he would not be a danger. And therefore, the concern of protection for the community would not be a serious concern, as it was at the time of sentencing. Well, I guess I understand half of the argument. I'm not sure I understand that we can assume, despite his prior record, that he's going to keep medicated and be just fine. I don't think the district court thought necessarily that that was the case. No, I understand that concern, Your Honor. And that's one of the things that we're arguing as unreasonable, because one of the fundamental principles of our jurisprudence is that someone who's mentally ill isn't as culpable. And here you've got untreated mental illness that, once treated, resolves, and the person can behave and become a functioning member of society. And therefore, we've got to recognize that there were chances, even the BOP had him during two periods of incarceration, failed to treat what were obvious symptoms of mental illness. Finally, he sought help himself, but it was ineffective. Finally, he has been effectively treated, and now he deserves the chance that he wasn't given before, because the need of protection of the community isn't as much of a concern if he has been diagnosed and treated with appropriate medication. So I think one of the concerns is that another concern that was raised in the opening brief was the fact that there was an unreasonable as applied enhancement, an enhancement that, in this case, was unreasonable as applied, because the career offender guideline, as discussed in the opening brief and discussed below, was the result of Congress's study, Congress's mandate, and Congress's directive, and is a flawed guideline that the Sentencing Commission itself has recognized has issues and disproportionately impacts blacks. We also argued in the brief that the sentence was substantively unreasonable because the district court didn't recognize, and the sentence imposed by the district court did not recognize, the fact that Mr. Phelps had serious mental health issues, which could be resolved by appropriate medical care. But didn't Judge Preggerson actually give him a sentence that was lower than the last conviction, a sentence for the last conviction? Usually when you get each conviction, the time gets higher. Here he actually gave him less than he did, than he had received for the last conviction. I think you're right, Your Honor. Your Honor, I think that he had increasingly higher sentences, and this one was, I think, I don't remember if it was higher than or it was something certainly within the range of the most recent sentence. But, again, our position would be that at the time of those sentences, he had mental illness which had not been diagnosed or treated. Now that he has, he deserves a second chance. And unless there are any more questions, I'll reserve the remainder of my time. I have counsels, Judge Gould. I do have a question. I'm having a little trouble reconciling. Your argument that under TAPIA, there's a mistake in the court talking about treatment, but at the same time saying that he wouldn't be a danger to the community if he gets treatment. What am I missing? Well, I'm not sure that I understand the distinction. I think under TAPIA, you're not allowed to consider the fact that the defendant needs medical care to impose a prison term. TAPIA, I think, left open the question of whether you're allowed to consider that factor in reducing the amount of imprisonment as opposed to lengthening the amount of imprisonment. I don't know if that was the point of Your Honor's question. I think I understand your point. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, Carol Chen for the United States. The low-end guidelines sentence imposed by the District Court was both procedurally and substantively reasonable. I want to address each of the issues raised by my colleague, but to do so, I would like to discuss what actually happened in the District Court and the record, what shows that the District Court actually did. The District Court, as the record shows, calculated the advisory guidelines range, acknowledged that it was advisory in nature, gave both parties adequate opportunity to discuss the sentences each of them believed was appropriate in this case, and then addressed the 3553A factors. In doing so, it stated a sufficient explanation for the sentence it imposed, and in particular, it stated the particularly relevant factors under Section 3553A. It did state that protection of community was a particularly relevant factor, but in addition to that, it also noted the seriousness of the nature and offense of bank robbery. It also noted that defendant was likely to reoffend in light of his criminal history. It did all of this after a long colloquy from defense counsel in which it is stated at Excerpt of Record 14-22, where defense counsel pointed out each of the mitigating circumstances that my colleague points out today. She pointed out the mental health arguments, specifically defendant's mental health issues. She pointed out in District Court level also the fact that defendant had difficulties in childhood. His mother had died when he was at a young age. She also discussed subsequently the father's alienation of affection towards the defendant. And she also discussed at length the mental health issues. And I want to note that the record clearly shows that District Court listened to each of these arguments and actually acknowledged on the record that it listened to these arguments and ultimately found such arguments not sufficient to warrant a lower sentence. That is all that the Supreme Court in Rita asks that the District Court does. And the District Court, in fact, did this in this case. Specifically, the Excerpt of Record shows at page 25 that District Court specifically says, I'm mindful of the mental health arguments that have been made. And I don't disagree that you, Mr. Phelps, have been suffering from some mental illness. The District Court even goes on to commend defense counsel for her fine efforts on behalf of the client. And he ultimately says, but I'm just not convinced at all. I'm not comfortable with anything less than the 151 months. The record clearly shows that the District Court listened to each of the mitigating factors raised by defense counsel, both here today as well as in the District Court level, weighed each of the Section 3553A factors. It's true that District Court did note specifically protection of the community. But that's one of three particularly relevant factors it found. And as the Supreme Court in cases like Rita, as this Court in cases like Cardi and Yosef's gun point out, the District Court is not obligated to tick off each of the Section 3553A factors. It pointed out and stated sufficiently of explanation for why it was imposing a low-end guideline sentence in this case. And as Judge Navarro points out, it is, in fact, lower than the previous sentence. And I should note, and as the panel knows, that this 151-month sentence was the low end, and the District Court ran a concurrent both to the 30-month parole violation sentence as well as the 24-month sentence it was imposing for the supervisor release revocation. With regard to TAPIA, as the government notes in its 28-J letter, I believe TAPIA actually is illustrative of exactly what did not happen in this case. The District Court, again, listened to the defense counsel's arguments, including the mental health arguments, acknowledged it, considered it, and actually acknowledged that it was a mitigating factor, it was considering. It specifically notes, I'm mindful of the mental health arguments, but the problem is, and it goes on to list the three particularly relevant factors, mitigating in favor of the low-end sentence. Ms. Chen, did the defense attorney offer the opportunity for the judge to provide a sentence that was essentially credit for time served and to put the defendant into more of a custodial treatment center, an in-house custodial treatment center? If he would have chosen what the defense attorney was requesting, then what kind of supervised release term would he be facing? Would it just be the five years? I believe five years would be maximum. So assuming that the judge had placed the defendant into this in-treatment program and the defendant had not done well and that he had violated conditions of the supervised release, all he could give him would be the five years? I believe that's correct, Your Honor. So that would be the maximum, would be five years. And here we're talking about more than ten years is what the guideline is looking at. That's correct, Your Honor. I do believe, I think it's important to note the substantial deference standard of this case. What struck me was that my colleague specifically stated that it was up to the district court to weigh the factors, which is exactly what the district court did in this case. And I believe that under the narrow and deferential standard that this court is viewing and reviewing this decision, there's no reason to believe that the district court committed a procedural error in this case or that the sentence is substantively unreasonable. And very quickly, I want to get to Pia, where in that case, clearly the district court on the record explicitly states that it was imposing the prison sentence it was giving because it wanted to give the defendant the opportunity to not only enroll into but also to complete the 500-hour drug residential treatment program. And it specifically states on the record that that is one factor it is considering. In this case, there's nothing in the record to indicate that's what the district court did other than consider and listen to the arguments made by defense counsel, weigh it as a mitigating factor. And the fact that the district court does state, I hope you get mental health treatment at BOP, so Pia makes very clearly that, as Judge Gould pointed out, just by noting that a defendant needs mental health treatment and hoping that they get it is not in violation of either 994 or of 3852. This is a completely different case from to Pia. I think to Pia is illustrative of when a district court does violate the mandates. I don't think that occurred here. I don't think the record. And to Pia, they gave him a longer sentence, particularly in order to get him treatment. That's correct, Your Honor. I don't believe there's anything in the record here to show that's what happened. And unless there's any questions. So you would not read to Pia as broadly as your adversary, that is that you can't take into account the need for mental treatment and the defendant's mental problems when you impose a sentence? I don't think I'd necessarily disagree with my colleague there. I think that to Pia court specifically states that a district court does not err by addressing a defendant and his mental health issues or his medical issues as long as they don't impose a sentence or lengthen a prison sentence specifically to get them. Right. So you would disagree with the characterization that you can't take it into account at all? I believe that a district court can take it into account when imposing and recommending supervised release conditions as to Pia states  but it cannot consider it as part of deciding whether to impose a prison sentence. Yeah, right. But I'm trying to understand. Frequently a judge will recommend a certain facility because of resources available there with respect to mental health treatment. You do not read to Pia as precluding that? I do not, Your Honor. I believe that to Pia court specifically says that that is okay. In fact, it specifically states that a district court has the discretion to order whatever outpatient substance abuse treatment program it sees fit. However, ultimately the probation office is the one that would be effectuating that order. So I do believe that if that were the case, I would disagree with my colleague there. And very quickly, with respect to the probation officer's recommendation letter, I think arguably it is ambiguous, potentially even problematic. When read just on its face, it does appear that the probation officer could have been recommending prison sentence in order to give the defendant the mental health treatment he needs. I think he said specifically it's best in a custodial setting. However, what we have here is we are reviewing the district court's decision, and the district court didn't just mechanically adopt that letter without addressing any of the Section 3553 factors or independently analyzing those factors. And here on the record, clearly the district court did not interpret the probation officer as recommending prison sentence in order to get defendant the mental health treatment. And certainly the district court was not doing that based on the record. If the district court made the choice, I'm going to give him probation or prison sentence. If I'm going to give him the prison sentence so that he could get treatment, that would not be kosher. That's correct, Your Honor. Okay. Unless any judge has questions, I'm ready to submit. Thank you. Thank you. Okay. Thank you, Your Honor. I just wanted to briefly respond. I think it's clear that the district court began its analysis saying he was adopting the findings and recommendations the probation officer set forth in the probation officer's letter. In the probation officer's letter, there's nothing in the record indicating that the district court then withdrew or limited that adoption. And the probation officer does use the defendant's need for treatment as a reason for imposing the sentence. And with respect to TAPIA and the fact that in TAPIA the district court may have imposed a lengthy sentence for the purposes of RDAP, in Justice Sotomayor's concurrence, she points out that she was skeptical of that because, in fact, there was absolutely no relationship between the 51-month sentence and the fact that the defendant was needed the RDAP treatment because RDAP only requires a 24-month sentence. So there was no need for a 51-month sentence. And, in fact, the 56-month sentence, which was the mandatory minimum, would have sufficed for RDAP. So Justice ‑‑ I'm not sure what we do with that. I know. Well, the point I was going to make was Justice Sotomayor says, I'm skeptical of that. But, in fact, at the time the district court imposed the sentence, it was valid under Ninth Circuit law to do that, to consider the need for rehabilitation in imposing sentence. And unless we can be entirely confident the district court did not follow Ninth Circuit precedent in imposing sentence, then we have to reverse. Thank you, Your Honor. Thank you. The matter just argued is submitted for decision. Before hearing the last case on the calendar, the court will take a ten-minute recess.
judges: Navarro, Schroeder, Gould